IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JEROME B.,[1]
    Plaintiff,

v.                                               Civil No. 3:20-cv-00704 (MHL)

KILOLO KIJAKAZI,[2]
Commissioner of Social Security,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits under the Social Security Act (the "Act").

Plaintiff was sixty-one years old at the time of his benefits application, making him "a person of advanced age" under the regulations. 20 C.F.R. § 404.1563(e) (defining a person of advanced age as one who is fifty-five years old or older.) (R. at 160.) He has a high school education and previously worked as a youth counselor from May 2006 through September 2017, and as a security officer at a health care center from October 2017 through September 2018. (R. at 164.) Plaintiff suffers from rheumatoid arthritis, diabetes, high blood pressure, and back pain. (R. at 163.)

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kijakazi should be substituted as the defendant in this suit.

On January 9, 2020, an Administrative Law Judge ("ALJ") found Plaintiff not disabled under the Act. (R. at 23.) After exhausting his administrative remedies, Plaintiff now seeks review of the ALJ's decision, arguing that the ALJ erred in her residual functional capacity analysis by finding Nurse Practitioner Shania Saufley's ("Nurse Saufley's") opinion unpersuasive and improperly relying on non-examining medical consultant opinions. (Pl. Jerome Bland's Mem. Supp. Mot. Summ. J. 1, 10, ECF No. 24 ("Pl.'s Mem.")).

This matter comes before the Court pursuant to 28 U.S.C. § 636(c)(1) on cross motions for summary judgment, which are now ripe for review.[3] Having reviewed the parties' submissions and the entire record in this case, and for the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 23) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 25) be GRANTED; and the final decision of the Commissioner be AFFIRMED.

## I.  PROCEDURAL HISTORY

On September 12, 2018, Plaintiff filed an application for disability insurance benefits alleging disability beginning September 11, 2018. (R. at 143-44.) The Social Security Administration ("SSA") initially denied this claim on October 25, 2018 (R. at 101) and again upon reconsideration on April 3, 2019 (R. at 113-15.) At Plaintiff's written request, the ALJ held a hearing on December 11, 2019, at which a vocational expert testified, as well as Plaintiff, who was represented by counsel. (R. at 31-67, 120-21.) On January 9, 2020, the ALJ issued a written opinion

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

holding that Plaintiff did not qualify as disabled under the Act. (R. at 12-23.) Plaintiff petitioned the SSA Appeals Council to review the decision, and on July 27, 2020, the Appeals Council denied his request for review, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-5.) Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*,

3

340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his past work given his residual functional capacity. § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 404.1520(a)(4)(v).

4

## III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 13-23.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from September 11, 2018 through the date of the ALJ's opinion.[4] (R. at 14.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: rheumatoid arthritis, degenerative disc disease of the lumbar spine, diabetes mellitus, and obesity. (R. at 14.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15-17.)

After step three, the ALJ considered Plaintiff's residual functional capacity.[5] (R. at 17.) The ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with the exception that he can occasionally push and pull with the lower right extremity, occasionally reach in all directions, and frequently handle items bilaterally. (R. at

---

[4] Substantial gainful activity is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[5] Residual functional capacity is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the residual functional capacity, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

17.) He is capable of occasionally stooping, kneeling, crouching, and crawling, as well as climbing ramps, ladders, ropes, and scaffolds. (R. at 17.) He can tolerate occasional exposure to extreme cold, vibration, and hazards. (R. at 17.)

Based on this determination, the ALJ considered at step four of the analysis whether Plaintiff could perform his past relevant work as a security officer, at least in the manner in which such work is generally performed.[6] (R. at 21.) The conclusion was based on the testimonies of Plaintiff and a vocational expert and the ALJ's review of the record. (R. at 21-23.) The ALJ found that: (1) Plaintiff could perform his past work as a security officer; and (2) this work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. (R. at 21-23.) Although the ALJ found Plaintiff not disabled at step four, she went on to consider step five, wherein she determined that Plaintiff was capable of performing other work available in significant numbers in the national economy, including as a gate guard. (R. at 22-23.) Accordingly, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 23.)

## IV. ANALYSIS

The residual functional capacity assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996). The ALJ must evaluate consultative opinions but is not required to award them any heightened value. 20 C.F.R. §§ 404.1527(d), 416.927(d).

---

[6] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

In this case, the ALJ fully explored the facts and inquired into the relevant issues in order to adequately develop the record, asking Plaintiff about his education and work history (R. at 38-45), medical conditions and the limitations caused by those conditions (R. at 46-57), and his daily activities. (R. at 49-57.) The ALJ then proceeded to ask the vocational expert questions and converted several of Plaintiff's comments concerning his limitations into further questions to the vocational expert. (R. 57-63.) Considering the testimonies of Plaintiff and the vocational expert, and after reviewing the record, the ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b).

### A. The ALJ Properly Assessed Plaintiff's Residual Functional Capacity Pursuant to SSA Regulations.

Plaintiff contends that the ALJ erred in her residual functional capacity analysis by improperly weighing the opinion evidence. (Pl.'s Mem. at 1). Defendant responds that Plaintiff's argument rests on an incorrect application of the SSA regulations for evaluating medical opinion evidence. (Def.'s Mem. at 1-2). For the reasons that follow, this Court finds that the ALJ properly evaluated Nurse Saufley's opinion based on the effective regulations.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b).

Under the SSA regulations, the ALJ must consider each medical opinion in the record. 20 C.F.R. §§ 404.1520c, 416.920c ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . in your case record."). The regulations define a medical opinion as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the [following] abilities . . .
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

*Id*. §§ 404.1513(a)(2), 416.913(a)(2). A medical opinion does not include "judgments about the nature and severity of [the claimant's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id*. § 404.1513(a)(3) (defining these categories of information as "other medical evidence").

The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the

treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors when considering the persuasiveness of medical opinions, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). Specifically, the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of

9

all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. §§ 404.1520c, 416.920c(a), (b), (c)(1)– (5). Supportability and consistency are the "most important" factors, and the ALJ must discuss how they considered these factors in the written opinion. *Id*. § 416.920c(b)(2).

Plaintiff filed his claim on September 11, 2018. (R. at 68.) Accordingly, the regulation governing the evaluation of medical evidence for this case is 20 C.F.R. § 404.1520c.

The ALJ found at step two that Plaintiff's degenerative disc disease of the lumbar spine was a severe impairment because it "significantly limit[s] the ability to perform basic work activities . . . ." (R. at 14.) While she found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ determined that Plaintiff's statements concerning the symptoms' intensity, persistence, and limiting effects were not entirely consistent with the other evidence in the record. (R. at 18.)

In her assessment, the ALJ noted that while Plaintiff's medical record displayed instances of "abnormal lumbar range of motion, decreased sensation in the right L5 distribution, and positive right-sided straight leg tests," these findings were not consistently found throughout the record. (R. at 19.)

> **1. Substantial Evidence Supports the ALJ's Evaluation of the State Agency Reviewing Physicians' Medical Opinions.**

In determining Nurse Saufley's opinion was inconsistent with, and unsupported by, the record as a whole, the ALJ examined: (1) other providers' opinions; and (2) the objective medical record. First, the ALJ examined the four opinions issued by state agency reviewing physicians. (R.

10

at 19-20.) All four physicians (Drs. Staehr, Godwin, Singh, and Chang), found that Plaintiff was capable of light work that required occasionally lifting and/or carrying up to twenty pounds, frequently lifting and/or carrying up to ten pounds, standing and/or walking about six hours in an eight-hour workday, sitting about six hours in an eight-hour workday, and pushing and/or pulling subject to the assigned weight limits. (R. at 20, 76-79, 93-97, 423-24, 426.) The physicians found that Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, stoop, kneel, crouch, and crawl, and he had no limit in his ability to balance. (R. at 77, 93, 423, 426.) Additionally, they opined that Plaintiff was limited to occasional bilateral reaching in all planes, and frequent handling due to joint pain in his upper extremities. (R. at 77-78, 94, 423, 426.)

The ALJ explained that she found the state agency physician opinions persuasive because they were consistent with the record, which showed that Plaintiff's gait, station, and coordination were regularly unremarkable, and treating providers had not documented that Plaintiff was uncomfortable while sitting or standing. (R. at 20, citing R. at 187-200, 280-336, 337-411, 428-53, 456-88, 494-511.) An MRI of Plaintiff's lower spine in January 2019 showed multilevel degenerative changes with significant facet arthrosis causing moderate to severe neural foraminal stenosis at L4-5, for which he has treated conservatively with pain medications, steroid injections, physical therapy, and home exercise programs. (R. at 429-34, 459, 463, 464-70, 474-78.)

The ALJ also looked at the objective medical evidence, which supported the state agency physicians' opinions. (R. at 19.) Specifically, she explained that Plaintiff's examinations intermittently showed decreases in sensation and strength, but Plaintiff regularly exhibited full strength, normal sensation, and full range of motion in most areas of his body. (R. at 323-24, 374, 457, 474, 495, 499.) Further, Plaintiff's treating providers did not typically indicate that Plaintiff appeared fatigued, exhibited an abnormal gait, or displayed deficiencies in attention and

concentration. (R. at 19.) The ALJ noted that Plaintiff's treatment during the relevant period was conservative, "consisting mainly of oral medication, a few steroid injections, and five physical therapy sessions." (R. at 19, 373, 459, 461, 463-64, 475.) For example, Plaintiff's orthopedist discussed operative and non-operative procedures in response to Plaintiff's radiography in May 2019 showing loss of disc at L4-5 and L5-S1. (R. at 474.) Plaintiff continued to opt for steroid injections over invasive surgery. (R. at 473-78.) Additionally, Plaintiff reported improvement with physical therapy. (R. at 19, 324, 376, 463, 468, 470, 473, 487.)

 The ALJ acknowledged that Plaintiff's pain likely prevents him from engaging in heavy work activities, but he generally exhibited full strength on examination. (R. at 20, 457, 474.) Nonetheless, the ALJ limited him to occasional pushing and pulling with the lower right extremity because his right leg demonstrated intermittent deficits in sensation. (R. at 20.)

 The ALJ agreed with the state agency physicians that Plaintiff's pain may make postural movements difficult but found that Plaintiff's activities of daily living suggested that he could perform postural activities at least occasionally. (R at 20.) For example, Plaintiff frequently engaged in driving, performing household chores, and caring for his dog. (R. at 188-191.) He can sweep, mop, clean his bathroom, mow his lawn on a riding mower, iron and launder his clothes. (R. at 190.) He shops in stores for an hour every "once in a while," and is independent in managing his finances. (R. at 191.) The ALJ noted that Plaintiff remained able to care for himself generally despite his hand symptoms, although she assigned a limitation for frequent handling based on Plaintiff's intermittent and joint swelling in his hands. (R. at 20.)

### 2. The ALJ Did Not Err When She Found Nurse Saufley's Opinion Unpersuasive.

On September 25, 2019, Nurse Saufley wrote that Plaintiff exhibited tenderness, pain, soft tissue swelling, and reduced grip strength in his upper extremities. (R. at 454.) She wrote that Plaintiff had several tender and a few swollen joints on examination. (R. at 455.) Nurse Saufley wrote that Plaintiff's symptoms included his self-reported 8/10 pain, with two-plus hours of joint stiffness in the morning, as well as hand swelling, weakness, and fatigue. (R. at 455.) The ALJ explained that she assigned a limitation for occasional reaching in all directions to address Plaintiff's intermittent range of motion limitations and tenderness in his shoulders and upper extremities. (R. at 20.)

On October 9, 2019, Nurse Saufley completed a medical source statement in which she reiterated her September 2019 findings. (R. at 489-93.) She opined that Plaintiff could walk up to two blocks before needing to rest or experiencing severe pain; he could sit for up to thirty minutes at a time and less than two hours total in an eight-hour workday; he could stand for up to thirty minutes at a time, and stand/walk less than two hours total in an eight-hour workday; and he would need a job that permitted shifting positions at will and allowed him to walk every forty-five minutes for fifteen minutes. (R. at 490.)

Nurse Saufley further opined that Plaintiff would need two unscheduled fifteen-minute breaks during a workday. (R. at 491.) She wrote that Plaintiff would not need a cane while standing. (R. at 491.) Additionally, she opined that Plaintiff could occasionally lift less than ten pounds, rarely lift up to ten pounds, and rarely perform postural movements, including twisting, stooping, crouching, and climbing. (R. at 491.)

Nurse Saufley also found that Plaintiff had significant limitations with reaching, handling, and fingering, and he could only use his upper extremities for ten percent of a workday for reaching, fine manipulation, and other maneuvers. (R. at 491, 493.) She stated that Plaintiff would be off task for fifteen percent of the workday due to his symptoms, he would have good days and bad days, and he would likely be absent from work about two days per month. (R. at 493.)

However, the ALJ found that the evidence in the record did not demonstrate that Plaintiff was so limited in his abilities to stand, walk, sit, lift, carry, reach and perform postural and manipulative tasks. (R. at 21.) For instance, the ALJ found that Plaintiff's treatment was generally "quite conservative, consisting mainly of oral medications, a few steroid injections, and five physical therapy sessions," which sometimes improved his condition. (R. at 19, citing 373, 459, 461, 463-64, 475.) She pointed out that his clinicians generally do not describe any abnormalities in his gait or station, and he indicated improved pain levels after a few physical therapy sessions. (R. at 19, citing 324, 376, 463, 468, 470, 473, 487.) The ALJ also stated that there was no indication that his providers ever suggested more intensive treatment. (R. at 19.)

The ALJ reasoned that Plaintiff's records do not fully support the level of severity or limitation that Nurse Saufley indicates, and although Nurse Saufley treated Plaintiff multiple times, the ALJ found that Nurse Saufley's opinion on Plaintiff's limitations was not consistent with and supported by the rest of the evidence. (R. at 20-21.) When determining whether the ALJ erred in her findings, the Court may not substitute its judgment for the ALJ's. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of

evidence). Based on the record as a whole, the Court cannot say that the ALJ's determination as to Nurse Saufley's medical opinion is not supported by substantial evidence

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 23) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 25) be GRANTED and the final decision of the Commissioner be AFFIRMED.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record and forward a copy to United States District Judge M. Hannah Lauck.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: December 23, 2021